UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMI HUNTING,

                Plaintiff,

    v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

                Defendant.

CASE NO. C19-5783MJP

ORDER

THIS MATTER is before the Court on two Motions: (1) Defendant American Family Mutual Insurance Company's Motion to Compel Discovery of Plaintiff Jami Hunting's medical records [Dkt. # 26]; and (2) Third Parties Jack Thomas and Casualty Loss Consultants' (CLC's) Motion to Quash or Modify American Family's subpoena to Verizon, seeking all of Thomas' cell phone records for the past two years. [Dkt. # 35]. The case arises from American Family's denial of Hunting's claim for damages under her insurance policy. Hunting seeks coverage and bad faith damages.

## I. BACKGROUND

In 2014, Hunting purchased a "Businessowners" commercial property insurance policy from American Family, to provide coverage for her Puyallup rental property. In September 2014, Hunting rented the home to the Gonzales family. The Gonzales' stopped paying the rent, and

1    Hunting terminated the lease effective May 1, 2017. Hunting inspected the property on May 3

2    and discovered that the Gonzalez family had vandalized the property, damaging the walls,

3    ceilings, doors, windowsills, carpet, appliances, and plumbing.

4        Hunting notified American Family of the loss and made a claim for vandalism under her

5    policy. American Family retained a third-party adjuster, Frontier Adjusters, to handle the claim.

6    Frontier's adjuster, Erik Boe, hired an inspector, James Gomez, to investigate. Gomez did so on

7    May 17. Based on Gomez's June 2017 report, American Family denied the bulk of Hunting's

8    claim, determining that the damage was the result of (excluded) "wear and tear," not (covered)

9    vandalism. Boe forwarded Gomez's report to Hunting on June 12, 2017.

10        Hunting's complaint [Dkt. # 1-2] alleges that she sought to negotiate her claim directly

11    with American Family from June 2017 until November 2018. She then hired a public adjuster,

12    Jack Thomas of CLC, to assist in her claim. In January 2019, Thomas submitted a Proof of Loss

13    claiming that replacement repairs would cost almost $100,000, based on an estimate prepared by

14    a contractor, Prime NW Construction.

15        On February 6, 2019, American Family responded, claiming that the vandalism damages

16    totaled $1879.94, less than the $2500 Deductible in Hunting's policy. It denied the remainder of

17    Hunting's claim. Hunting and Thomas claim they continued pursuing and unsuccessfully

18    negotiating her claim through June 2019.

19        Hunting sued in July 2019, asserting breach of contract and extracontractual bad faith

20    (Washington Consumer Protection Act and Insurance Fair Conduct Act) claims. [Dkt. # 1-2].

21    Hunting seeks the actual cash value of the repairs and lost rental income. She also claims

22    American Family failed to timely and reasonably investigate and resolve her claim, and unfairly

23    valued it. She seeks extracontractual damages (trebled), fees, and costs. Hunting's Initial

24

1   Disclosures articulated a claim for $600,000, including her bad faith claims. [See Wenzel-Grette

2   Dec. Dkt. # 28-2 at Ex. B, p. 3].

3       At her deposition, Hunting declined to answer questions about the delay between June

4   2017 (when American Family sent her the Gomez report describing most damages as wear and

5   tear) and November 2018, when Thomas informed American Family that Hunting had engaged

6   CLC to pursue the claim. Hunting claims that she is on long term disability and that her health

7   issues precluded her from pursing the matter during that 17-month period. She would not answer

8   any questions about her medical condition or when and how it affected her claim.

9       Nevertheless, she reiterated her claim that the delays in obtaining an estimate and

10  performing the repairs are part of her claim against American Family. [Dkt. # 28-1 at Ex. A, p.

11  96]. After the deposition, Hunting's attorney conceded the delay was Hunting's fault, not

12  American Family's, and agreed that she would not seek damages based on it. Hunting's attorney

13  also informed American Family that if it sought and obtained her medical records, Hunting

14  "WILL resume her claims for damages during the stated time period." He claimed that would be

15  an additional $30,000. [Dkt. # 28-4 at Ex. D, p. 1].

16      American Family now seeks to compel Hunting's medical records. It argues they are

17  relevant to her claim it unreasonably delayed its investigation and improperly handled her

18  vandalism claim. It demonstrates that Hunting's disability began in 2014, and that it appears to

19  have continued past 2018. It argues that Hunting's health and its impact on the 17-month delay is

20  relevant to her claims and to its own defenses.

21      American Family also seeks discovery sanctions under Fed. R. Civ. P. 37(a)(3)(B). It

22  argues that the material is clearly discoverable (and relevant) and purports to demonstrate that

23

24

1   Hunting's attorney obstructed her deposition, made speaking objections, held inappropriate

2   private conferences while a question was pending, and improperly coached her.

3          Hunting denies any improper deposition conduct, and argues that her medical records are

4   "privileged" under RCW 5.60.60(4). Hunting claims that given her "express waiver" of damages

5   based on the delay, her health during that period is not relevant. She too seeks sanctions, based

6   on what she claims are "reckless misstatements of the law and facts, coupled with an improper

7   purpose." [Dkt. # 30 at 10 (citing *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001))]. American

8   Family argues and demonstrates that Hunting has expressly *not* so agreed. [Dkt. # 38 at 1 (citing

9   counsel's email, attached to the Wenzel-Grette Dec., Dkt. # 28-4 at Ex. D) ("We will not agree to

10  waive the extra contractual fees or to a limited dismissal of the remaining contractual claims.")]

11         Meanwhile, American Family also sent a subpoena to Verizon, seeking *all* of Jack

12  Thomas's cell phone records, including calls and texts, from October 31, 2018, to the present.

13  Thomas and CLC ask the Court to quash or modify that subpoena under Rule 45 45(d)(3),

14  because only calls and texts to and from Hunting (and perhaps other players in this case), made

15  during Thomas's involvement in the case, could even be marginally relevant. Thomas and CLC

16  claim they frequently work on insurance claims with American Family and its current law firm,

17  do not trust them, and should not be required to share with them texts and calls in unrelated cases

18  (and personal matters) under the guise of discovery in this case.

19         American Family's Response accuses Thomas of failing to meet and confer, and of

20  making unsupported accusations about its conduct in other cases to incite the Court. It moves to

21  Strike portions of his Response as improper and without evidence. It describes his objections to

22  the Verizon subpoena as "baseless," and explains why Thomas's communications with Hunting

23  and others related to this case are relevant. But it makes no serious attempt to explain why it

24

1   should have access to data wholly unrelated to this dispute. Instead, it points to boilerplate

2   authority generally describing the discoverability of non-privileged material, and suggests

3   Thomas should seek a protective order. It does not cite any authority for allowing it unfettered

4   access to its adversary's cell phone.

5                                          **II. DISCUSSION.**

6          Under the Civil Rules, a party may obtain discovery on "any nonprivileged matter that is

7   relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, discovery also must

8   be "proportional to the needs of the case, considering the importance of the issues at stake in the

9   action, the amount in controversy, the parties' relative access to relevant information, the parties'

10  resources, the importance of the discovery in resolving the issues, and whether the burden or

11  expense of the proposed discovery outweighs its likely benefit." *Id*. A party may move to compel

12  discovery after certifying their good faith attempt to resolve the dispute with the other party. Fed.

13  R. Civ. P. 37(a)(1). "Although the party seeking to compel discovery has the burden of

14  establishing that its requests are relevant, *see* Fed. R. Civ. P. 26(b)(1), '[t]he party who resists

15  discovery has the burden to show that discovery should not be allowed, and has the burden of

16  clarifying, explaining, and supporting its objections' with competent evidence." *Doe v. Trump*,

17  329 F.R.D. 262, 270 (W.D. Wash. 2018) (quoting *Blemaster v. Sabo*, No. 2:16-CV-04557 JWS,

18  2017 WL 4843241, at *1 (D. Ariz. Oct. 25, 2017)).

19  **A.  Hunting has placed her medical records at issue.**

20         Hunting argues that her medical records are privileged under RCW 5.60.60(4). She

21  conditionally offers to waive some of the damages she seeks in exchange for keeping her

22  medical records out of the case. But her complaint and her deposition testimony make clear that

23  her extracontractual bad faith claims rely on her allegation that American Family handled her

24  claim unreasonably, partly because it waited so long to deny it. She also asserts a breach of

ORDER - 5

1    contract claim for lost (monthly) rent. She admits that 17 months—the bulk—of the delay she

2    complains about are not American Family's fault.

3        American Family argues that RCW 5.60.60(4)'s "privilege" does not apply in federal

4    court, even where the court exercises supplemental jurisdiction over pendent state law claims[1].

5    [Dkt. # 38 at 3, notes 8 and 9 (citing *Gilson v. Evergreen at Talbot Rd. L.L.C.*, 2005 U.S. Dist.

6    LEXIS 41152, *5-7 (citing *Religious Tech. Center v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th

7    Cir. 1992) (refusing to apply California litigation privilege in copyright action with pendent state

8    law claims); *Hancock v. Hobbs*, 967 F.2d 462, 466-67 (11th Cir. 1992) (courts confronting issue

9    have uniformly held federal privilege law applies in federal question cases with pendent state law

10   claims)]. These authorities are not directly on point.

11       More importantly and more persuasively, American Family argues that Hunting has

12   waived her right to conceal her medical history because her claims have placed it at issue. [Dkt.

13   # 38 at 5, (citing *Carson v. Fine*, 123 Wn.2d 206, 213-14, 867 P.2d 610 (1994); *Randa v. Bear*,

14   50 Wn.2d 415, 421, 312 P.2d 640, 644 (1957)( the privilege is that of the patient, and by the

15   terms of the statute it may be waived by plaintiff-patient.)]. Hunting alleges that American

16   Family's unreasonable delay in handling her insurance claim is central to her claim for bad faith

17   damages.

18       Hunting's medical history is also likely relevant to American Family's affirmative

19   defenses that Hunting caused some or all her own damages, and that she failed to mitigate any

20   damages. [See Dkt. # 29 at 17-19]. That history is therefore discoverable, and requiring her to

21   produce her records in this case is proportional to its needs.

22

23   _____

[1] This may be true, but it is not the situation here. This is a § 1332 diversity jurisdiction case.
24   [See Notice of Removal, Dkt. # 1].

American Family's Motion to Compel [Dkt. # 26] is GRANTED. Hunting is ORDERED:

(1) To respond and provide testimony regarding her medical and health issues at her continued deposition;

(2) To respond to requests for production seeking her medical and health records including American Family's Requests for Production No. 13, 14, and 18; and

(3) To authorize the retrieval of SSA records by completing and executing the SSA Consent for Release of Information Form (OMB No. 0960-0566), attached as Appendix B to Defendant American Family's Second Requests for Production.

She should do so within 20 days.

**B.  American Family's Subpoena to Verizon is overbroad.**

The answer to the second discovery dispute is at least a clear as the answer to the first. American Family has demonstrated that Thomas' cell phone records and the communications he had with Hunting and other witnesses in this case are likely to be relevant, and they are discoverable.

American Family's claim for unfettered access to Thomas' cell phone and *all* his communications with *anyone* over the past two years—more than a year past his involvement in Hunting's claim—is patently overbroad, and it cites no authority for it. The Court is not going to grant American Family permission to "rifle through private, irrelevant files." *Bush v. Pioneer Human Servs.*, No. C09-518 RSM, 2010 WL 11682489, at *4 (W.D. Wash. Jan. 8, 2010).

Thomas and CLC's Motion to Quash American Family's subpoena to Verizon Wireless is DENIED. Their Motion to Modify that subpoena is GRANTED, as follows:

American Family is entitled to subpoena Thomas' text and call data for only a limited time period: November 18, 2018 to June 30, 2019.

1     American Family is entitled to subpoena data related to only a limited range of cell phone

2  numbers during that period. American Family can subpoena from Verizon data reflecting calls

3  and texts to and from the cell phone numbers associated with the following people:

4     (1) Plaintiff Jami Hunting;

5     (2) Adjuster Erik Boe;

6     (3) Inspector James Gomez;

7     (4) Robert Robinson of Prime NW Construction.

8                    \* \* \*

9     These motions present plain vanilla discovery disputes that are resolved by reference to

10  the Federal Civil Rules of Procedure, common practice, and common sense. The filings reflect

11  that Hunting, American Family, and Thomas have each been guilty of sharp discovery practice

12  and have become entrenched in untenable positions. Nevertheless, the Court is not inclined to

13  award sanctions in what, to it, is a new case. The various Motions for Sanctions are DENIED.

14  American Family's Motion to Strike is DENIED. The "Motion to Compel" other discovery

15  imbedded in American Family's Response [Dkt. # 43] is improper and it is DENIED.

16     IT IS SO ORDERED.

17     Dated this 13th day of October, 2020.

18

19

20  Marsha J. Pechman
     United States Senior District Judge

21

22

23

24