HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMI HUNTING,<br><br>              Plaintiff,<br><br>   v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>              Defendant. | CASE NO. C19-5783MJP<br><br>ORDER |

THIS MATTER is before the Court on Defendant American Family Insurance Company's Renewed Motion for Partial Summary Judgment Re 2 Year Suit Limitation and for Partial Summary Judgment on Extracontractual Claims. [Dkt. # 48].

**I. BACKGROUND**

The largely undisputed material facts are reflected in the documents in the record. In 2014, Hunting purchased a "Businessowners" commercial property insurance policy from American Family, to provide coverage for her Puyallup rental home. In September 2014, Hunting rented the home to the Gonzales family. The renters stopped paying rent (and had more

than the authorized 8 tenants[1] in the home), and Hunting terminated the lease effective May 1, 2017. She claims that Gonzales told her she "would be sorry" she terminated the lease. Hunting inspected the property on May 3 and discovered that the Gonzalez family had vandalized the property, damaging the walls, ceilings, doors, windowsills, carpet, appliances, and plumbing. [See generally Hunting Declaration, Dkt. # 59, and attached exhibits (before and after photographs)]. Hunting also lists the damaged items in her Response. [Dkt. # 54 at 4-5].

Hunting notified American Family of the loss and made a claim for vandalism damages under her policy. American Family assigned a senior adjuster, Erik Boe, to handle the claim. Boe hired an independent adjuster, James Gomez of Frontier Adjusters, to inspect the home and its damage. Gomez did so on May 17. [Boe Dec., Dkt. # 18-1 at p. 4].

On May 31, Boe informed Hunting by phone that Gomez's inspection determined that the bulk of the damage was wear and tear, faulty or inadequate maintenance, or tenant neglect. He offered to have Gonzales estimate the upstairs bathroom water damage, and she asked him to do so. [Dkt. # 18-1 at p. 11]. Based on Gomez's report and estimates, Boe denied the bulk of Hunting's claim by email on June 7, again explaining that most of the damage was the result of (excluded) "wear and tear," not (covered) vandalism. Boe told Hunting that the vandalism portion of the damage ($1879.94) was less than the policy's $2500 vandalism deductible. He again offered to open a water damage claim (net $ 2067.64, after the $1000 water damage deductible), if Hunting wanted to do so. [Dkt. # 18-1 at p. 11].

Hunting's complaint [Dkt. # 1-2] alleges that she sought to negotiate her claim directly with American Family from June 2017 until November 2018. She now concedes that she had health issues which prevented her from pursuing her claim during that 17-month period. In

---

[1] Hunting emphasizes that the Gonzales's had six children, an aquatic bird, and fish.

1  November 2018, Hunting hired a public adjuster, Jack Thomas of Casualty Loss Consultants
2  (CLC), to pursue her claim for coverage. On **November 20, 2018**, Thomas informed Boe that he
3  had been retained. [Dkt. # 18-1 at p. 13]. In response to Thomas's request, Boe sent Thomas a
4  copy of Hunting's American Family insurance policy on **December 5, 2018**. [Wenzel-Grette
5  Dec., Dkt. # 49-6].

6  On **January 3, 2019**, Boe sent Thomas a letter highlighting the Policy's two-year suit
7  limitation period. [Dkt. # 18-1 at p. 15]. On **January 23**, Boe asked Thomas for more
8  information about whether the damages had been repaired and urged Thomas to contact him if
9  Hunting was claiming any additional damage related to vandalism, so that American Family
10 could re-inspect the home. [Dkt. # 49-7].

11 Thomas responded the next day, **January 24,** promising a Proof of Loss and enclosing a
12 Washington Insurance Fair Conduct Act (IFCA) notice, accusing American Family of bad faith.
13 He claimed American Family had unreasonably delayed its investigation and unreasonably
14 determined the damage was wear and tear, not vandalism. [Dkt. # 18-1 at pp. 17-18]. Thomas
15 submitted the Proof of Loss to Boe on **January 31**, claiming that replacement repairs would cost
16 almost $100,000, based on an estimate prepared for Hunting by a contractor, Prime NW
17 Construction. [Dkt. # 49-8 at p. 1].

18 Boe responded to Thomas's January 24 letter on **February 6**. He again sought
19 information about "whether any of the damage claimed as vandalism had been repaired," and
20 asked Thomas to arrange a re-inspection of the property. [Dkt. # 18-1 at p. 20]. That inspection
21 apparently occurred, with Gomez and Thomas present.

22 On **March 5**, following the re-inspection**,** Boe informed Thomas that American Family's
23 assessment of the damage had "not changed since its initial inspection on May 16, 2017." He

24

reiterated that most of the damage was the result of excluded wear and tear, lack of maintenance, or home remodel. He explained again that the covered vandalism component ($1879.94) was less than Hunting's $2500 deductible, but again offered to open a separate water damage claim. Boe concluded that "no payment can be issued at this time." [Dkt. # 18-1 at p. 24].

Thomas responded to Boe by email the next day, **March 6.** He said Boe's March 5 letter was "expected" and informed Boe that "the insured will now proceed with a law suit and you can expect to receive a complaint in the next few weeks." He also claimed that American Family had "apparently denied the loss of rents claim." [Dkt. # 20-1 at p. 5].

Boe responded to Thomas by certified mail on **March 27.** He refuted Thomas's claim that American Family had changed its position on the water damage claim (clarifying that he had never agreed that the water damage was the result of vandalism) and pointed out that no water damage claim had been submitted. He reiterated that the vandalism loss was less than the deductible, and described why American Family had determined that most of the estimated repairs involved wear and tear, maintenance, and home remodel, not vandalism repair. He noted that Thomas had not previously claimed lost business income (rent) and offered four weeks' rent for the time it would take to repair the vandalism damage. Boe concluded by confirming that "American Family reserves and does not waive its rights under the policy." [Dkt. # 49-9].

This is the last documented contact Boe had with Thomas, CLC, or Hunting, before the lawsuit was filed.

On **April 5**, Hunting emailed Thomas about American Family's March 27 letter, asking about "the next steps." [Dkt. # 49-11 at p. 2]. Thomas replied on **April 8**, informing Hunting that

he "did a letter" informing American Family that "we are moving forward with the lawsuit."[2] He told her: "there will be no negotiations on your claim so this is the time you have to decide whether or not you want to go ahead with a law suit." Hunting responded on **April 11** that she "definitely wants to move forward" in court. [Dkt. # 49-11 at p. 1]. American Family demonstrates that Hunting did not produce these emails until after the discovery cutoff.

The letter referenced in Thomas's email does not appear in the voluminous record. Also missing is the "**May 1** letter" Thomas claims he sent to "Defendant," as part of continuing to approach it with adjusting the Hunting claim." [Thomas Dec., Dkt. # 56 at pp. 2-3; the same claim was made in Thomas's earlier Dec., Dkt. # 15 at p. 2].

In any event, Thomas now claims that he had "several conversations with adjuster Gomez," which occurred "in **later May and June 2019**." He claims that Gomez told him he would "speak to management and recommend they cover the entire loss." [Thomas Dec., Dkt. # 56 at pp. 2-3]. Thomas claims he never heard back; Gomez denies any conversation took place.

Hunting sued in **July 2019**, asserting breach of contract and extracontractual bad faith (Washington Consumer Protection Act and Insurance Fair Conduct Act) claims. [Dkt. # 1-2]. Hunting seeks the actual cash value of the repairs and lost rental income. She also claims American Family failed to timely and reasonably investigate and resolve her claim, and unfairly valued it. She seeks extracontractual damages (trebled), fees, and costs. Hunting's Initial Disclosures articulated a claim for $600,000, including her bad faith claims. [See Wenzel-Grette Dec. Dkt. # 28-2 at Ex. B, p. 3].

---

[2] Thomas had already conveyed that information to Boe on March 6. It is not clear whether that email was the letter he referenced.

## II. DISCUSSION

**A. Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B. There is no evidence supporting Hunting's claim that American Family is estopped from enforcing the two-year suit limitations period.**

Hunting sued American Family on July 26, 2019, more than two years after she discovered the loss—May 3, 2017. American Family argues that Hunting's breach of contract (coverage) claims are time-barred by her policy's two-year suit limitations period.

American Family moved for partial summary judgment on this defense earlier this year. [Dkt. # 10]. Hunting conceded her policy includes such a provision but argued, as she does now, that American Family waived or is estopped from asserting that defense, based on what she claimed were its ongoing efforts to negotiate her claim after the two-year period expired on May 3, 2019.

In opposition to the first motion, and in support of her estoppel argument, Hunting claimed: "my public adjuster was attempting to negotiate with American Family through the Spring of 2019, including another inspection by an American Family representative." She claimed she "recalled discussions" after May 3, 2019, and that she "believed American Family continued to negotiate and adjust the claims after May 3, 2019." [Hunting Dec., Dkt. # 16 at p. 3].

Thomas testified that "through the spring of 2019, I continued to approach Defendant with adjusting the Hunting claim further, including a letter dated May 1, 2019." [Thomas Dec., Dkt. # 15 at p. 2]. He claimed that "after the May 1, 2019, letter, I had several conversations with the American Family adjuster. These conversations occurred in later May and June, 2019." He also claimed, as he does now, that the adjuster told him he would recommend full payment on the claim. [Dkt. # 15 at pp. 2-3]. Thomas now clarifies he spoke to Gomez, not the American Family adjuster he had been communicating with throughout the claim, Boe. [Thomas Dec., Dkt. #56 at pp. 2-3].

In April 2020, Judge Leighton denied American Family's first summary judgment motion on this issue. [Dkt. # 19]. His Order was expressly based on Thomas's earlier testimony: "Thomas's assertion he continued negotiating with an American Family adjuster into June 2019 supports estoppel." [Dkt. # 19 at 7]. The prior Order relied on *Chong v. Safeco Ins. Co. of Am.*, No. C05-0974RSM, 2006 WL 1169788, at *5 (W.D. Wash. Apr. 27, 2006) (citing *Litz v. Pierce Cty.*, 44 Wash. App. 674, 683 (1986)), for the proposition that an insurer sending "mixed signals" to its insured, by failing to deny a claim outright, is estopped from asserting the limitations period defense. [Dkt. # 19 at 5-6; *see also* Order denying Motion for Reconsideration, Dkt. # 21 at p. 3 ("According to Thomas, American Family continued to negotiate the claim and was even amendable to altering its position and covering the damage past he May 3 deadline.")]

American Family renews its motion based on two new pieces of evidence, which it claims undermine Judge Leighton's prior conclusion:

(1) Thomas's deposition admission that he never talked to Boe after Boe's final March 27 letter, again denying coverage for the majority of Hunting's vandalism claim. Thomas now claims he spoke to *Gomez*, in "later May or June."

(2) the late-disclosed emails, which demonstrate that Thomas and Hunting knew and agreed in early April—more than a month after the re-inspection, and well before May 3—that the "negotiations were over" and the next step was litigation, undermining any claim that they reasonably believed the negotiations were instead ongoing, and reasonably relied on something American Family said or did to delay that litigation.

Hunting contends American Family is equitably estopped from asserting the suit limitation period, because it continued to negotiate with her past the two-year deadline, dissuading her from suing until July.

1  "The elements of equitable estoppel are: (1) an act that is inconsistent with a later claim; (2) another party's reasonable reliance on the act; and (3) injury to the other party that would result if the first party is permitted to repudiate the earlier act." *Taylor v. Allstate Ins. Grp.*, No. 2:15-CV-00030-SAB, 2015 WL 2083453, at *3 (E.D. Wash. May 5, 2015) (citing *Dombrosky v. Farmer Ins. Co. of Wash.*, 84 Wash. App. 245, 256 (1996)). "In general, the estoppel analysis involves issues of fact." *Chong v. Safeco Ins. Co. of Am.*, No. C05-0974RSM, 2006 WL 1169788, at *5 (W.D. Wash. Apr. 27, 2006) (citing *Litz v. Pierce Cty.*, 44 Wash. App. 674, 683 (1986)).

An insurer can be estopped from asserting a suit limitations period (or be deemed to have waived its right to enforce it) where its *conduct causes* the insured to change position or *refrain* from performing a necessary act, causing him *prejudice*. *See Dickson v United States Fidelity & Guar. Co.*, 77 Wn.2d 785, 788, 466 P.2d 515 (1970) (emphasis added); *Buchanan v. Switz. Gen. Ins. Co.*, 76 Wn.2d 100, 108, 455 P.2d 344 (1969) (insurer is estopped where its acts, statements, or conduct justifiably induce the insured to act or forbear from acting, to his prejudice).

The now-much-clearer timeline demonstrates that there were no negotiations (or even contact) between Hunting or Thomas and anyone at American Family between Boe's March 27 letter and May 3. Nothing American Family did in that period could have lulled Hunting or Thomas into missing the filing deadline in the vague hope of "continued negotiations." Boe closed the door on Hunting's vandalism claim in 2017, and repeatedly told Hunting and then Thomas that the vast majority of damage was not covered under the policy, right up until March 27. As he accurately described it, "our position has not changed." And Hunting and Thomas were aware of that fact—their early April emails demonstrate they knew that negotiations were over, and that the next step was litigation. American Family did not send "mixed signals;" save

for $1879.94, it consistently denied Hunting's claim that the damage was the result of vandalism. Hunting cannot point to any conduct by American Family that caused her to refrain from timely filing suit, as a matter of law.

This conclusion is not altered by Thomas's repeated but vague claim that he "sent a letter" on May 1. That letter is not in evidence, its absence is not explained, and its content and recipient are unknown. Even if he did send a letter, no one claims that anyone at American Family said or did anything in response that would have led Thomas or Hunting to believe that they did not need to timely file suit under the policy, which required Hunting to sue just two days after the letter was sent.

Hunting's now-clarified claim that Thomas spoke to Gomez (rather than Boe) some weeks *after* the deadline passed is similarly unhelpful. Even assuming Gomez had authority to make coverage decisions[3] for American Family, Thomas does not claim he changed his mind before the deadline. Thomas and Hunting could not have reasonably relied on Gomez's statement to refrain from timely filing suit; the deadline had already passed when they claim he made it. There is no evidence that American Family is estopped from asserting the defense it expressly told Thomas it was going to assert. The April emails are incontrovertible evidence Thomas told Hunting "the negotiations were over," based Boe's March 27 letter, and that Hunting understood and agreed that the next step was litigation[4].

---

[3] This is implausible. There is evidence that Gomez had authority to *price* the repair of covered damage, but there is no evidence that Gomez ever "handled" Hunting's claim or made any coverage determinations. There is no correspondence between Gomez and Thomas in the record; Thomas consistently tried to persuade Boe that the damage was the result of vandalism. And, in support of her bad faith claims, Hunting complains that the "person making the decision regarding coverage (Mr. Boe) did not actually visit the loss site[.]" [Dkt. # 54 at p. 25].

[4] Hunting argues these emails do not prove there were no future conversations, and claims that she and Thomas did subsequently "discuss the opportunity to continue negotiations." [Dkt. # 54

American Family's Renewed Motion for Partial Summary Judgment on Hunting's time-barred breach of contract claims is therefore GRANTED, and those claims are dismissed with prejudice.

**C. There is no evidence supporting Hunting's claim that American Family acted in bad faith.**

Hunting also asserts three related extracontractual claims: a bad faith tort claim, a CPA claim, and a claim under the IFCA. Each his based on her argument that American Family unreasonably delayed[5] handling her claim, and that its coverage determination was unfounded. The dismissal of Hunting's breach of contract claim does not necessarily result in the dismissal of her extracontractual claims. *See O'Neill v. Farmers Ins. Co. of Wash.*, 124 Wn. App. 516 (2004) (contractual limitations periods do not apply to bad faith and CPA claims).

American Family argues that it acted reasonably and in good faith throughout. It argues that the damages to Hunting's home were the result of wear and tear, or the failure to maintain, which are not covered under the policy. It argues that the majority of the damage was not the result of willful or malicious destruction; it was not intentional vandalism. It also argues that Hunting has not demonstrated that any alleged bad faith caused her any damage; the delay in resolving the claim was Hunting's responsibility, not American Family's, and she has still not cleaned or repaired or rented her home.

The interpretation of an insurance policy is a question of law, and the policy is construed as a whole, with the court giving force and effect to each clause in the policy. *Queen City Farms*

---

at 18]. That may be (though the dates and content of those conversations are not disclosed), but estoppel must be based on American Family's inconsistent conduct, not Hunting's.

[5] Hunting conceded in opposing American Family's prior Motion to Compel that that she was responsible for the delay. Her Response [Dkt. # 54] instead emphasizes that the damages should have been covered as vandalism under the policy.

v. *Central National Ins. Co.*, 126 Wn.2d 50, 59-60, 882 P.2d 703 (1994); *see also American Star Ins. Co. v. Grice,* 121 Wn.2d 869, 874, 854 P.2d 622 (1993). The language of an insurance policy is to be interpreted in accordance with the way it would be understood by the average person, rather than in a technical sense. *Id.* Overall, the policy should be given a practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that renders the policy nonsensical or ineffective. *Transcontinental Ins. Co. v. Washington Public Utilities Districts' Utility System,* 111 Wn.2d 452, 456-457, 760 P.2d 337 (1988) (internal citations omitted).

An insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.,* 147 Wash.2d 751, 765, 58 P.3d 276 (2002). In Washington, an insurer generally has an "enhanced duty" to put its insured's interests on "equal footing" with its own. *Am. States Ins. Co. v. Symes of Silverdale, Inc*., 78 P.3d 1266, 1270 (2003); *Tank v. State Farm Fire & Cas. Co.* 412 P.2d 381 (1986). To succeed on a bad faith claim, the insured must prove that the insurer acted in an unreasonable, frivolous, or unfounded manner. *Smith v. Safeco Ins., Co*., 150 Wash.2d 478, 486, 78 P.3d 1274 (2003).

An insurer does not act in bad faith where it "acts honestly, bases its decision on adequate information, and does not overemphasize its own interest." *Werlinger v. Clarendon Nat'l Ins. Co.,* 129 Wash.App. 804, 808, 120 P.3d 593 (2005), *review denied,* 157 Wash.2d 1004, 136 P.3d 759 (2006). The determinative question is the reasonableness of the insurer's actions in light of all the facts and circumstances of the case. *Anderson v. State Farm Mut. Ins. Co.,* 101 Wash.App. 323, 329–30, 2 P.3d 1029 (2000), *review denied,* 142 Wash.2d 1017, 20 P.3d 945 (2001). Where reasonable minds could not differ as to the reasonableness of the insurer's actions, summary

judgment is appropriate. *See Hertog, ex rel. S.A.H. v. City of Seattle,* 138 Wash.2d 265, 275, 979 P.2d 400 (1999); *see also Lloyd v. Allstate Insurance Co.*, 167 Wash. App. 490, 495-96, 275 P.3d 323 (Div. 1, 2012).

The elements of a Washington CPA claim are: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that impacts the public interest, (4) which causes injury to the plaintiff in his or her business or property, and (5) the injury is causally linked to the unfair or deceptive act or practice. *See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wash.2d 122, 125, 196 P.3d 664, 665 (2008). Finally, in order to succeed on a Washington IFCA claim, the insured must demonstrate that the insurer "unreasonably denied" her claim. RCW 48.30.015(1).

Hunting accurately claims that American Family denied[6] the bulk of the damage she claimed as vandalism, determining instead that it was the result of wear and tear, deferred maintenance and, perhaps, tenant neglect. She claims American Family wrongfully asked her to submit a claim for water damage, though it knew that damage was covered. She suggests without citation that inviting a water damage claim was itself bad faith. She does not address her failure to respond to that invitation.

Hunting's extracontractual claims are based primarily on the argument described in her correspondence with Boe, and repeated here, that American Family's determination that the damage was the result of wear and tear or lack of maintenance, and not intentional vandalism, was unreasonable and unfounded.

Hunting argues that the terms "vandalism" and "wear and tear" are not defined in the policy, and must be given their "ordinary and common meaning, not the technical, legal

---

[6] American Family's claim that it "promptly accepted coverage" of Hunting's vandalism claim ($1879.94) is correct, but does not address the fact it *denied* coverage for the remaining ~ $98,000 vandalism damages Hunting claimed under her policy.

meaning." [Dkt. # 54 at p. 20 (citing *Allstate Ins. Co. v. Peasley*, 131 Wash.2d 420, 424, 932 P.2d 1244 (1997)]. Merriam-Webster defines vandalism as the "willful or malicious destruction or defacement of public or private property." It defines "wear and tear" as "the loss injury or stress to which something is subjected by or in the course of use."

Hunting argues that the damage to her rental home did not result from wear and tear—which she argues (without citation) means "normal and reasonable" use—and thus it is covered. She claims the damage was the result of unreasonable abuse by her tenants and their six children and pets, and that "tenant neglect" is covered (because it is not expressly excluded) by her policy. She does not cite any authority for this analysis.

Hunting argues that American Family concluded that most of the damage was caused by the Gonzales children, and argues that the damage her home suffered is "not normal;" it was "certainly" "due to neglectful parenting." She claims that a reading of her policy to exclude such damage is not reasonable. [Dkt. # 54 at p. 23]. She also states the damage was "intentional," although that conclusion is inconsistent with her prior argument that the damage was the result of negligence, or "hard living and poor housekeeping." [Dkt. # 54 at p. 12].

Hunting relies in part on the Declaration of Ron Berg, a videographer who videotaped the home in August 2019, and who was not identified as an expert witness. Berg opines that the damage to the house was not normal wear and tear, that it was intentional, and that it was "disgusting." [Dkt. # 57 at p. 2].

American Family argues in reply[7] that its denial of coverage was reasonable and was based on a reasonable interpretation of the policy language (even if it was incorrect). It argues

---

[7] American Family moves to strike Hunting's Response as three pages overlength. [Dkt. # 62 at p.1]. Its own Motion [Dkt. # 48] was two pages overlength—even with 59 footnotes. The Motion to Strike is DENIED. American Family also Moves to Strike Berg's Declaration, because he was

that such a denial does not amount to bad faith as a matter of law. It relies on a series of cases so holding, including *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists' Utils. Sys.*, 111 Wn.2d 452, 470, 760 P.2d 337, 349 (1988):

> A denial of coverage based on a reasonable interpretation of the policy is not bad faith, *Castle & Cooke, Inc. v. Great Am. Ins. Co.,* 42 Wash.App. 508, 518, 711 P.2d 1108, *rev. denied,* 105 Wash.2d 1021 (1986), and even if incorrect, does not violate the Consumer Protection Act if the insurer's conduct was reasonable.

[Dkt. # 62 at 10 (other citations omitted)]. American Family emphasizes that even Hunting could not identify which damage items were "wear and tear" and which were "vandalism" when viewing the photos in her deposition [Dkt. # 62 at p. 11 (citing Dkt. # 49-1 at p. 125 lines 18-25) ("I don't know that I'm claiming that or not.")].

Hunting has not met her burden of demonstrating that American Family's handling of her claim, and its denial of the bulk of that claim, was unreasonable, even viewed in the light most favorable to her. She has established, at best, that there was an honest disagreement about the nature of the damages. Such a disagreement is not enough to support a bad faith, CPA, or IFCA claim as a matter of law.

American Family's Motion for Summary Judgment on Hunting's "bad faith" claims is GRANTED, and those claims are dismissed with prejudice.

### III. CONCLUSION

Defendant American Family's Motion for Summary Judgment [Dkt. # 48] is GRANTED and Plaintiff Hunting's breach of contract and extracontractual claims (bad faith, CPA, and IFCA) are DISMISSED with prejudice. The remaining Motions [Dkt. #s 52 and 64] are DENIED as moot, and the Trial Date is STRICKEN. The matter is CLOSED.

---

not disclosed and is not qualified as an expert on insurance coverage issues. That Motion is GRANTED. The parties' remaining Motions to Strike are DENIED.

IT IS SO ORDERED.

Dated this 20th day of October, 2020.

Marsha J. Pechman
United States Senior District Judge